IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CR-45-D-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMES CALVIN EBRON, | ) | |
| | ) | |
| Defendant. | ) | |

On July 16, 2020, James Calvin Ebron ("Ebron") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 74]. On August 14, 2020, Ebron through counsel filed memorandum in support [D.E.77]. On August 27, 2020, the United States responded in opposition [D.E. 80]. As explained below, the court denies Ebron's motion.

On January 25, 2012, pursuant to a written plea agreement, Ebron pleaded guilty to conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, a quantity of marijuana, and a quantity of ecstasy. See [D.E. 26]. On July 25, 2012, the court held Ebron's sentencing hearing. See [D.E. 40]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 41]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Ebron's total offense level to be 34, his criminal history category to be VI, and his advisory guideline range to be 262 to 327 months' imprisonment. See [D.E. 41]. After considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Ebron to 288 months' imprisonment. See id.; [D.E. 40]. On August 1, 2012, Ebron appealed. See [D.E. 42] On March 20, 2013, the Fourth Circuit affirmed Ebron's conviction and dismissed Ebron's appeal of his

sentence. See United States v. Ebron, 514 F. App'x 358, 359 (4th Cir. 2013) (per curiam) (unpublished); [D.E. 50, 51].

On June 20, 2014, Ebron moved to vacate his sentence under 28 U.S.C. § 2255. See [D.E. 53]. On December 3, 2014, the court dismissed Ebron's motion. See [D.E. 64, 65]. Ebron did not appeal.

On April 22, 2015, Ebron moved to reduce his sentence under 18 U.S.C. § 3582(c)(2), 28 U.S.C. § 1331, and U.S.S.G. Amendment 782. See [D.E. 66]. Ebron filed an amended motion on May 11, 2015. See [D.E. 72]. On June 2, 2015, the court denied Ebron's motion to reduce sentence. See [D.E. 73]. Ebron did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United

2

States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially restates section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. §

---

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

3582(c)(1)(A). Nevertheless, section 1B1.13 provides applicable policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See, e.g., United States v. Clark, No. 1:09-cr-336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished). In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; Dinning v. United States, No. 2:12-cr-84, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) (unpublished).

Ebron is age 56 and seeks compassionate release pursuant to section 3582(c)(1)(A)(i). Ebron relies on the "other reasons" policy statement in application note 1(D) to U.S.S.G. § 1B1.13 and cites the COVID-19 pandemic and his asthma and high cholesterol. See [D.E. 74] 3.

The court assumes without deciding that Ebron has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A). See [D.E. 74] 2–3; [D.E. 74-1] 1–2. Moreover, the government has not invoked section 3582's exhaustion requirements. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Ebron's claims on the merits.

As for the "other reasons" policy statement, the court assumes without deciding that Ebron's asthma and high cholesterol coupled with the COVID-19 pandemic are extraordinary circumstances consistent with application note 1(D). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

section 3553(a) factors counsel against reducing Ebron's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8. Ebron was a high-volume drug dealer between 2000 and 2009, purchasing and distributing 1 kilogram of heroin, 19 kilograms of marijuana, and 525 grams of ecstasy. See PSR [D.E. 38] ¶ 12. Moreover, Ebron has a breathtaking criminal history, having been convicted 44 times since 1982. See id. at ¶¶ 14–40. Ebron's record demonstrates a history of violence, including multiple convictions for simple assault, assault on a female, and resisting or obstructing a police officer, and a history of drug dealing. See id. Ebron repeatedly has performed poorly on supervision. See id. Nonetheless, Ebron has taken some positive steps while incarcerated. See [D.E. 77] 6–7; [D.E. 77-2]; cf. Pepper v. United States, 562 U.S. 476, 480 (2011). Having considered the entire record, Ebron's medical conditions, the steps that the BOP has taken to address COVID-19 and to treat Ebron, the section 3553(a) factors, Ebron's arguments, and the need to punish Ebron for his criminal behavior, to incapacitate Ebron, to promote respect for the law, to deter others, and to protect society, the court declines to grant Ebron's motion for compassionate release.

In sum, the court DENIES Ebron's motions for compassionate release [D.E. 74, 77].

SO ORDERED. This 6 day of November 2020.

JAMES C. DEVER III
United States District Judge